Schulenburg & Co. vs. Gibson.

---

SCHULENBURG & CO., DEF'DTS IN ERROR vs. CHAS. GIBSON. PL'FF. IN ERROR.

1. A person furnishing materials for a building in the county of St. Louis, under a contract with the owner, is bound to file his lien within six months from the time his demand accrues, in order to charge the building with a lien.

## ERROR to St. Louis Circuit Court.

### STATEMENT OF THE CASE.

At the November term, 1850, the respondents commenced an action against Boecker, upon a demand for materials furnished by respondents to Boecker, used in the erection of a house on the southeast corner of Broadway and Columbia streets, in the city of St. Louis. The demand on which the suit was brought had been filed as a lien against the property on which the said house was erected. At the April term, of said circuit court, default having been taken and entered against Boecker, Charles Gibson, trustee for said Cornelia V. Wilson, voluntarily came into court and waived the issuing of any *scire facias*, and entered his appearance as party to the action, and thereupon an agreed case was made between the parties to the following effect, to-wit: On the 5th day of October, 1849, Charles Boecker was the owner in fee simple, and was then in possession of a piece of ground situate on the southeast corner of Broadway and Columbia streets, in St Louis, and while so owning and being in possession of said ground contracted with the respondent to furnish materials for the construction of a building or buildings on said ground. Said materials were delivered to said Boecker by the respondent, and was in and about the erection of said buildings on said ground. All such materials were furnished and claimed bween the said 5th of October, 1849, and the 4th day of January, 1850. By far the largest portion, however, was so furnished and delivered before the 16th day of November, 1849. It was farther agreed that the same, claimed by respondent, was still due them for such materials, and that on the 29th day of August, 1850, respondent gave notice, as required by law, and on the same day filed with the clerk of the circuit court of St. Louis county a just and true account of the demand with a true description of the property, &c. That suit was brought on the demand on the 20th day of Oct, 1850. On the 23d day of Nov., 1849, Boecker conveyed the said property to Schafer's trustee to secure the payment of the sum of $200 and interest in one year from stated date; that on the 19th day of December, 1850, upon default having been made in the payment of said recovery and $300 of ground rent, said property, at the instance of said Schafer, was sold in pursuance of the power contained in the deed to Schafer's trustee, and Charles Gibson as trustee for said Cornelia V. Wilson became the purchaser of the same together with the building thereon.

Schulenburg & Co. vs. Gibson.

Said building for which said respondent furnished said materials was not completed until after the first day of March, 1850. Upon this state of facts it was submitted to said circuit court. Whether as against the interest acquired in said property by the said Gibson as trustee as aforesaid under said deed of trust, the said respondent's claim is a valid lien.

Whether said property under the said state of facts is liable to the lien claimed by respondent.

The circuit court give judgment for the respondent. Mr. Gibson moved to set aside the finding and grant a new trial for the following reasons:

1. Because the court erred in matter of law in the decision of the case.

2. Because, by the facts as argued, it did not appear that the respondent filed their claim with the clerk of the circuit court within six months after the demand occurred.

3. The facts agreed, showed that respondents had waived their lien by delay in finding it. Defendants excepted, brought the case by writ of error.

The motion for a new trial having been overruled and exceptions taken, the case is brought here by writ of error.

GIBSON, for plaintiff in error.

The last item in the account of the plaintiffs below was furnished to Boecker, as appears by the agreed case of 4th January, 1850. The lien was not filed, neither was any notice given until the 29th of Aug., 1850, more than six months after the cause of the action accrued.

The building was finished, March, 1850—about five months before notice was given to the lien filed.

The point on which the plaintiff in error relies, is that the plaintiff's account was not filed in time, nor was the notice given in the time required by law, and therefore that there is no lien against the property.

To commence at the beginning, the Rev. Code of 1835, page 108, sec. 3, requires "every person who wished to avail himself of the benefit of this act" to file his account within six months "after such demand shall have accrued."

By the Rev. Code of 1845, p. 733, (State edition,) sec. 2, it is provided that every person except a sub-contractor who wishes to avail himself of the benefits of this act "should file, with the clerk of the circuit court of the county in which the building is situate and within six months after the material shall have been furnished or work and labor performed, a just and true account," &c.

The plaintiff in this case is not a sub-contractor and therefore cannot recover under this act.

The plaintiff relies, no doubt, on the special act of 1842-3, p. 82, which is applicable only to St. Louis county. Have they complied with the provisions?

Sec. 3 of this act, says that "every person who wishes to avail himself of the benefits of the preceding section (which gives the lien) shall give notice to the owner, owners or agent, within thirty days after the indebtedness accrued or the completion of the building or improvement, that there is such an amount due," &c.

In this case the indebtedness accrued on the 4th January, 1850, (the date of the last item in the account) and the building was finished in March, but no notice was given and no account filed until the 29th of August following, a period of more than six months from the 4th of January, and about five months from the time the building was completed.

Section 4 declares it to be "the duty of every person who wishes to avail himself of the benefit of this act, to file with the clerk within six months after notice shall have been given agreeable to section third a just and true account of the demand" &c., but in this case no notice was given at all, "agreeable to section third."

The 10 section, on which no doubt the plaintiff relies if continued so as to apply to the in-

cipient steps necessary to perfect a lien, is flatly and unquestionably contradictory to the 3 and 4 sections of the same act, and is opposed also to all other acts passed by the legislature, as will be seen by the law above quoted.

Section 10 is a restraining clause, and only affects the lien after suit brought and neither in terms nor by its spirit and true intent, can be construed so as to give any directions to a principle contractor in what manner to proceed in order to perfect the lien.

This court has already decided in Lee & others vs. Chambers, 13 Mo. Rep. 238, that suit must be brought within 90 days after filing the lien.

I confess that I cannot clearly understand the meaning of section 10 when considered in connection with the whole act. I am however entirely confident, that whatever may be the meaning of this section, it has not any application to the time of filing a lien, giving notice &c., because the 3 and 4 sections completely and clearly cover this ground, so far at least as sub-contractors are concerned, and the act of 1835 directs how principle contractors shall proceed. Until the passage of the act of 1845, the notice to be given by a principal contractor was governed by the act of 1835 above quoted, and after the passage of the act of 1845, it was to be done in accordence with that act; because the act of 1843 has no specific provisions on this subject, and the general law is in force except when it is clearly contrary to some specific provision of the act of 1843 and both acts of 1835 and 1845 require notice to be given within six months after the demand accrued. Now surely if we must refer to the general law to find if any notice at all was required, we ought to be governed by the provisions of such acts to determine when and how such notice must be given, and by neither of the above acts was the plaintiff's notice in time.

The good of the public requires that property ought not to be bound for the long period of one year by a secret incumbrance which is to be prefered to all others and of which there is nothing on the records of the country. but which cannot be cut out or defeated by any subsequent transfer by the owner even to a *bona fide* purchaser for value. This state of things never could have been intended by the legislature.

As persons having contracts with the owners were already provided for by the act of 1835, it seems to me that this act of 1843 was only intended to give sub-contractors a lien who before the passage of this act had none and does not apply to such principle contractors, and that the exception in the 3 section 1843 was inserted only to prevent a repeal of the act of 1835 as to St. Louis county.

The agreed case shows that the notice was given and lien filed according to law on the 29th August, 1850, this means only that the papers were in form of law but does and was not intended to wave the question of time and the question of time was the only question argued below.

## LORD, for defendant in error.

I. No notice was necessary under the act of 1843, when the contract was made with the owner : Sec. 3 page 83, Laws of Mo. 1842-3.

1. The act of 1843 is declared by this court to be alone operative in St. Louis county and in the same case this court also declared that the act of 1845 does not repeal or modify it : Speilman vs. Shook and others, 11 Mo. R. 340, (see opinion at page 343.)

2. The whole act of 1843 must be taken together, and this court will then give it such a construction as will make the act consistent, and as will but carry out the ends intended to be obtained thereby. Now by section 3 of said act, we say no notice in such a case as this was required and that section 4 of same act requiring lien to be filed within six months after notice &c., only applies to these cases, when sub-contractors are seeking to enforce a lien. We think upon a fair construction of the acts 1843, that any contractor who makes a contract with the owner may file his lien at any time within twelve months after the completion

of the building being careful to file his lien so as to enable him to sue thereon before the twelve months expire.

See sections 9 and 10 Law 1843. The act requires notice to be given within 30 days &c., "but the above limit in regard to notice shall not extend to persons having contracts with the owners" &c. What limit shall apply in this last case? Shall we go to the act of 1845? that act is not in force here and so declared by this court. 11 Mo. R. 343, but what notice would have been required between the date of the act of 1843 and 1845? certainly not the time mentioned in the act of 1845 which act was not then in existence !

II. If any notice was required it was given in time, for it was given within six months after the completion of the building.

The building was completed after the first day of March and notice given and lien filed on the 29th day of August ensuing. Now the notice spoken of by the act of 1843 now to be given within 30 days after the indebtedness accrued on the completion of the building, but such limits does not apply to persons having contracts with the owners, Then we go to the act of 1845 to find the limit as to the time when a person who has a contract with the owner must give notice and find it: Must be six months. Very well, then we say we must come back to the local act of 1843 to find from what date the six months begin to run and we find that it may begin to run from the completion of the building, and notice having been given within six months after the completion of the building it was in time. See agreed state of facts.

III. The appellant, by the agreed case, concedes that the respondent, gave notice of lien in title, for he admits that the notice was given as required by law (see agreed case) that was not the question therefore in the court below, but the question was, as to the priority of lien between respondent's demand and the deed given to Schafer trustee and under which Mrs. Wilson holds the land and building in question.

From the agreed case it appears that the materials furnished by respondent were furnished between 5th day of October, 1849, and the 4th day of January, 1850, and the building not completed until after the 18th day of March, 1850. The deed of Mest to Schafer's trustee under which Wilson claims, was made on the 23d day of November 1849 and Boecker remained in possession until the 19th day of December, 1850. Sec. 6 of act of 1843 at page 84 seem to settle the point of lien.

GAMBLE, J., delivered the opinion of the court.

The only question to be determined in this case is, whether a person furnishing materials for a building in the county of St. Louis, under a contract with the owner, is bound to file his lien within six months from the time his demand accrues in order to charge the building with a lien.

There is probably no part of the law, in which more confusion exists in consequence of legislation, general and local, than on the subject of liens in the county of St. Louis.

The act of 1835 Revised Code 108, gave liens to those who furnished materials or worked upon buildings under contracts with the proprietor. This act was general, operating throughout the State. It provides that the account which was claimed to be a lien, should be filed within six months after the demand accrued. It directd the clerk to provide a book and make an abstract of the liens filed, and a descrip-

Schulenburg & Co. vs. Gibson.

tion of the property charged therewith.  The mode of enforcing the lien, by an ordinary action or by *scire facias,* is provided, and the effect of the judgment and the form and effect of the execution are substantially prescribed.  The time, within which the action must be brought upon the lien, is not prescribed, but it is provided in the 8th section, that no lien shall bind a building for a longer period than twelve months after the building is finished, unless a suit shall have been brought on it in the manner prescribed in the act.

The act of February 16th, 1841, was an act to amend the act of 1835, and was likewise general in its operation.  By it liens were given to sub-contractors for work and labor and for materials.  Provision was made, for notice to be given to the owner of the building, by the person performing the work or furnishing the materials previous to performing it, or furnishing the materials, of his intention to do so and of the probable value thereof, and the person wishing to impose the lien, was allowed to settle with the contractor and ascertain by such settlement the amount due for the work and materials, one copy of which was required to be given to the owner of the building; and when the lien was to be imposed, a duplicate of the settlement was required to be filed by the sub-contractor, within ten days after the demand accrued, with the clerk of the circuit court.  For the duties of the clerk and the mode of proceeding upon the lien, reference is made to the original act of 1835.

The act of February 24th, 1843, which applies alone to the county of St. Louis, opens, in the first section, with declaring who shall have liens for work done or materials furnished for buildings or other improvements, and extends the liens to persons employed by the owner, agent, contractor or sub-contractor.  The 2nd section applies the liens mentioned in the first section, to buildings erected upon leased lots, and subjects the interest of the lessee to liability for the satisfaction of the liens.  The 3rd section requires a notice to be given to the owner or his agents, by the person wishing to avail himself of the benefits of the preceding section, that there is such an amount due thereon, and that he intends to hold the building or improvement until the true sum due is paid; a copy of the notice is to be filed with the lien, and the section closes with these words, "but the above limit in regard to notice, shall not extend to persons having contracts with the owner, owners or agent." The 4th section provides, that it shall be the duty of every person who may avail himself of the benefits of this act, to file with the clerk of the circuit court, within six months after notice shall have been given agreeably to section third, a just and true account of the demand justly

due him after all just credits given, which is to be a lien upon such buildings or other improvements, and a true description of the property, or so near as to identify the same, upon which the lien is intended to apply, with the name of the owner or contractor, or both if known, and if not known, then, in that event which ever may be known to the person filing the lien. The 5th section imposes on the clerk the same duties in regard to liens under this act that are required in all the other acts. The 6th section gives a preference to liens for work and materials over all incumbrances, attaching subsequently to the commencement of the buildings. The 7th section provides "that a person wishing to proceed against property charged with a lien by virtue of the act, may commence his action before a justice of the peace when the amount does not exceed ninety dollars, and when judgment is obtained against the owner, agent, contractor, or sub-contractor as the case may be, a transcript may be filed in the office of the clerk of the circuit court, who shall thereupon issue execution as in ordinary cases, and the sheriff shall immediately proceed to sell the same as other property on executions is sold." The 8th section provides that in all cases, when the demand shall exceed ninety dollars, the action shall be brought in the circuit court. The 9th section requires that all actions under this act shall be brought within ninety days after filing the lien. The 10th section, like the 8th section of the act of 1835, provides, that "no lien shall bind a building for more than twelve months after the building is completed; unless a suit shall have been brought in the manner provided in this act." The 14th section repeals "all acts or parts of acts contrary to or inconsistent with the provisions of this act."

It has been thought best to state the substance of this act in its material provisions in order that there may be an accurate idea of what the law is in the county of St. Louis in relation to liens, by ascertaining how much of the general law remained in force after the passage of this special act. This special act still continues in force within the county of St. Louis, as it and other special laws, operating in St. Lous county, were expressly continued at the revision of 1845.

In the first place it is to be remarked, that by the general tenor of its provisions and by the limited repeal in the 14th section, this act was not designed to be a complete and full act of legislation covering the whole ground of mechanics' liens within the county. It is apparent that much of the system is designed to be left to the general laws: as an instance of this, it provides, that actions for sums over ninety dollars are to be brought in the circuit court, but it does not provide for rendering the act effectual in the enforcement of the lien. The general

law authorized a general judgment to be rendered in such action, and that execution should issue "against such proportionable part of the property charged with the lien as the plaintiff's demand bears to the whole amount of the liens that are charged upon said property under the act, which proportionable part shall be decided by the court, and also against other property of the defendant." This provision enforced the lien, and it cannot be supposed that the special act was designed to leave persons, having liens in St. Louis county, without the means of enforcing them. The general law must be held still to regulate the remedy and in fact continues in full force in the county in all its provisions not inconsistent with the special law.

The provisions in the third section in requiring a notice to the owner of the property or his agents, that a certain sum is due to the person who has worked on, or furnished materials for the building, and that he intends to hold the building or improvement until the sum is paid, would seem by its own terms, to be applicable only to sub-contractors, and not to the person with whom the owner has dealt in relation to the erection of the building; for as the dealings between the owner and contractor are as much known to one party as to the other, no notice as between them is necessary, either of the amount due or of an intention to claim a lien. But the last clause of this section expressly declares, that the limit as to notice shall not extend to persons contracting with the owner. This language does not imply that there is some notice required between contractor and owner, with a different limitation of time from that fixed in this section, which is thirty days after the indebtedness accrued or completion of the building, but excludes the idea that notice within any given time is required between such parties. This section then in its operation is confined to sub-contractors. As the 4th sec., which directs the acts to be done in order to impose the lien upon the land, requires the demand to be filed within six months after giving the notice, according to the third section, and as it requires that in addition to the description of the property to be charged with the lien, the person filing the demand shall state the "name of the owner or contractor or both if known," it can apply only to sub-contractors. This fourth section is the most important part of the act, in showing the class of liens which the act was designed to enforce; for it comprehends in its directions all that is required to be done in placing the demand upon record in order to charge the property, and these directions are inapplicable to a demand asserted under a contract directly with the owner of the property.

There are some subsequent provisions in the act, in which the language is general, and which may be held to be alterations of the general

law; such as the 6th section which gives a preference to the lien for work and materials over all incumbrances, subsequent to the commencement of the building.   These subsequent clauses do not touch the questions arising in this case.

This act leaves the person who performs work or furnishes materials under a contract with the owner, to pursue the general law in imposing the lien upon the property.   We have seen that all the directions of this act apply to other persons than the contractor, and consequently the general law is in no sense inconsistent with this act, when it is left to prescribe the course to be pursued by contractors.

Again, although this special act was continued in force at the revision of 1845, any change in the general law, made at the time of that revision, would be operative in the county of St. Louis if not repugnant to or inconsistent with the special act, so that the law regulating the liens, for work done and materials furnished for buildings in the city and county of St. Louis, is to be found in the special act and the revised law of 1845; the special act being the one to be enforced whenever they are inconsistent.   Taking the general law then, as the rule governing the proceedings required to impose a lien for work done or materials furnished under a contract with the owner, we find that the person who furnishes materials and intends to hold the property chargeable for the demand, must file a just and true account of the amount due him "within six months after the materials shall have been furnished:" Rev. Code 733, section 2.

In the present case, the last item of the account for the materials furnished, was on the 4th of January, 1850.   The demand was not filed until the 29th of August, 1850, being more than six months after the furnishing of the materials and the accruing of the plaintiff's demand. This was too late in order to make the demand a lien upon the property.

The judgment of the circuit court was rendered against the defendant, Boecker, as the person indebted to the plaintiffs.   The defendant, Gibson, claiming the property under Boecker voluntarily appearing and waiving a scire facias, the case was submitted upon an agreed state of facts between him and the plaintiffs.   The question of law arising upon the agreed facts, was, whether the demand was a lien upon the property. The court gave judgment for the plaintiffs and awarded execution against one-fifth of the property.   The judgment against the property and the award of execution are reversed; the other judges concurring.